49 CCPA

**Application of Walter LORENZ and Richard Wegler.**

**Patent Appeal No. 6787.**

United States Court of Customs and Patent Appeals.
July 25, 1962.

this conception date—well, I won't add that."

876

Connolly & Hutz, Wilmington, Del. (Werner H. Hutz and John A. Sarjeant, Wilmington, Del., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges and Judge WILLIAM H. KIRKPATRICK.[*]

WORLEY, Chief Judge.

The sole issue here is whether appellants' application[1] satisfies the requirements of Sec. 112, 35 U.S.C. The examiner held it did not. The board affirmed. Appellants ask this court to reverse that holding.[2]

Sec. 112 provides, in part:

"The specification shall contain a written description of the invention, and the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same and shall set forth the best mode contemplated by the inventor of carrying out his invention."

The only attempt to comply with the use requirements of that portion of Section 112 is found in the following language from appellants' specification:

" * * * A characteristic feature of the novel phosphoric acid esters is their low toxic effect against warm-blooded animals, while at the same time they have a good effect against a very wide range of insects."

The examiner held that language insufficient to inform one skilled in the art how to use the compounds. He was of the opinion that the assertions "good effect against a very wide range of insects" and "low toxic effect against warm-blooded animals" were "nebulous and of no value whatsoever." He amplified his views as follows:

"It is common knowledge that there are several classes of insecticides functioning in entirely different ways depending upon whether they act as contact poisons or stomach poisons. It is also common knowledge that insecticides may be employed in distinct classes of use, namely to destroy insects on plants, to destroy parasitical insects on animals and to destroy insects in inanimate surroundings such as termites in timber. The environment, as well as the type of insect, usually determine the kind and manner in which the insecticide is applied. Depending on the types of the insect, toxicity of the agent to the host, e. g. plant

[*] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL pursuant to provisions of Section 294(d), Title 28 United States Code.

1. Serial No. 526,558, filed August 4, 1955, for "New Phosphoric Acid Esters and Process for Their Production."

2. The examiner and the board made no distinction between the product claims and the process claims as to the ground of rejection. While appellants filed reasons of appeal which would justify our separate consideration of both groups of claims, we construe appellants' brief to be an abandonment of any issue as to the legality of such a rejection of the process claims. Our decision is thus necessarily limited to a consideration of the rejection solely on the validity of the rejection of the product claims. In re Application of Le Baron, 223 F.2d 471, 42 CCPA 956, and cases cited therein; and L. & C. Hardtmuth, Inc. v. Fabrique Suisse De Crayons Caran D'Ache S.A., 287 F.2d 599, 48 CCPA 873.

or animal is an important factor. * * *

"On the basis of applicants' disclosure no one would know how to use one of the claimed compounds to kill even a single common insect with any degree of certainty whatsoever. This would seem to have been left for future experimentation. Thus, whether the compounds are to be employed as sprays, dusts, fumigants, aerosols, systemic applications or baits is indeterminable. Whether the compounds are to be used as stomach poison for insects having biting or chewing mouth parts, or against non-surfaced-feeders where contact insecticides are required is still to be determined. Whether the compounds are protective or eradicant insecticides is to be determined."

The board affirmed in both its original decision and after reconsideration.

In their brief here appellants alleged the board erred in the following respects:

"1. The Board did not give adequate consideration to the state of the art concerning insecticidal use of the class of phosphoric and thionophosphoric acid esters to which appellants' novel compounds belong.

"2. The Board improperly held that appellants' assertion of a 'good effect against a very wide range of insects' was too 'nebulous' to enable one skilled in the art to use appellants' new esters.

"3. The Board failed to recognize that the application as a whole communicates to one skilled in the art an adequate teaching of the manner of using appellants' new esters."

█ Appellants specifically argue that the prior art shows that many phosphoric acid esters of the class to which their compounds belong are known to be effective insecticides and toxic to warm-blooded animals. The board agreed but pointed out the fallacy of concluding therefrom that appellants' compounds must necessarily be insecticides by noting that many such compounds "were good repellents yet ineffective as insecticides." The board also cited a recent patent wherein similar compounds are described as harmless insect attractants for use in conjunction with an insecticide. In addition, the board cited a U. S. Department of Agriculture handbook [3] which discloses that some phosphoric acid esters are good repellents yet ineffective as insecticides, while others are good insecticides yet ineffective as repellents. Some of the esters were reported to exhibit no useful effect on the insects or larva. We are, therefore, unable to agree with appellants' first alleged error. It is quite clear that the board gave ample consideration to the state of the art.

Appellants argue that their disclosure inescapably communicates to one skilled in the art that their compounds are insecticides. We do not agree. It should have been an easy matter for appellants to have expressly described their compounds as insecticides but all they say is that their compounds have a "good effect" against insects. We think that language vague and nebulous as it is, would be equally applicable to a repellent or even an attractant.

Finally, appellants allege that known phosphoric esters, when used as insecticides, have a toxic effect on warm-blooded animals. They therefore contend that one skilled in the art, upon being informed that appellants' compounds have low toxicity while at the same time possessing "a good effect against insects," would know that the compounds were insecticides.

We do not agree. The specification merely asserts that low toxicity to warm-blooded animals is "A characteristic feature" of appellants' compounds. If

3. U. S. Department of Agriculture Handbook No. 69, issued May 1954, "Chemicals Evaluated As Insecticides and Repellents at Orlando Florida" by King, pages 265, 266 and 267.

888878

the characteristic feature is that of low toxicity while insecticides normally are highly toxic to warm-blooded animals, it seems to us that one skilled in the art might well reason that the compounds are something other than insecticides. The specification does not state that the "characteristic feature" is in any way unexpected so as to suggest to one skilled in the art the meaning now alleged by appellants.

Appellants are seeking a seventeen year monopoly. We would remind them that if they have in truth invented something which promotes the progress of science and the useful arts, then in exchange for a patent grant they must make a full and complete disclosure of their invention, leaving nothing to speculation or doubt. That Congress so intended is evident from the strong and comprehensive language of Section 112 which appellants here have failed to satisfy.

The decision is affirmed.

Affirmed.