52 CCPA

**Application of Hampton G. CORNEIL and Andrew D. Suttle, Jr.**

**Patent Appeal No. 7284.**

United States Court of Customs and Patent Appeals.

June 17, 1965.

Rehearing Denied Oct. 12, 1965.

Frank S. Troidl, Houston, Tex., for appellants.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

WORLEY, Chief Judge.

This appeal is from the Board of Appeals' affirmance of the examiner's rejection of claims 4 through 15, the only re-

maining claims of appellants' application, serial No. 723,056, for "Isotope Production," filed March 21, 1958.

The invention relates to a method for the production and recovery of radioactive isotopes through detonation of a nuclear device of the fission or fusion type in a suitable geological formation. The device is composed of at least a critical amount of neutron target material and is detonated "to provide for a substantially instantaneous liberation of an intense flux of particles and radiations such as neutrons, protons, alpha particles and gamma rays whereby * * * isotopes are radioactively produced." Preferably a salt formation, such as a salt dome, constitutes the host formation.

The application discloses that a well may be drilled from the earth's surface to the salt dome formation and a cavern formed therein by elution with water "in accordance with methods known to those skilled in the art." The water is then removed from the cavern and a suitable nuclear device placed therein. After the well is closed "with any suitable means such as a packer," the nuclear device is detonated.

In one method for recovery of the resulting isotopes, a string of tubing is run down the well into the cavern at a predetermined time after detonation, and water is passed therethrough. It is stated that the water first introduced contacts molten material at about the temperature of molten salt and is converted to steam which rises in the well around the tubing, but that the water will progressively cool the contents of the cavern to below the boiling point of water so that water, rather than steam, will then be withdrawn from the cavern. Isotopes carried by the steam and water passing out of the well are said to be recovered in a conventional processing unit.

Appellants disclose that, instead of using an essentially chemically nonreactive material, such as water, to remove the isotopes, "liquid volatilizable materials such as phosgene, carbon tetrachloride, liquefied chlorine, liquefied bromine, liquefied fluorine, etc.," which will selectively react with a selected radiation product or products, may be employed to attain selective recovery of a desired portion of the radiation products without the necessity of recovering the entire contents of the cavern.

Claim 4 is representative:

4. A method which comprises introducing into a compact, competent, subsurface geological salt formation comprising at least about 90 per cent sodium chloride a feed material comprising a critical amount of a fissile neutron producer and a neutron target material, said feed material being introduced in a non-critical configuration, thereafter bringing said neutron producer into a condition of criticality in order to generate a high flux of neutrons and sufficient heat to form a zone of molten salt to thereby effect nuclear reaction of the target material with the liberated neutrons whereby a zone of molten salt is formed having radiation products contained therein, introducing a fluent material from the surface of the earth into said zone of molten salt, and withdrawing at least a portion of the introduced material together with at least a portion of the radiation products for recovery of radiation products therefrom.

The board considered all the claims unpatentable as based on an insufficient disclosure, and as obvious in view of the prior art.[1] It also regarded claims 6 and 9 indefinite in the term "scavenging agent" used therein.

1. The references relied on in the prior art rejection are:
   Fermi et al.   2,206,634   July 2, 1940.
   Rougeron, Les Applications de L'Explosion Thermonucleaire, Paris, Editions Berger-Levrault, 1956, pages 42 to 53, 153 to 168, 190 to 194.

In initially rejecting on insufficient disclosure, the board referred to the following:

UCRL [2] 5677, Plowshare Series, May 14, 1959, pages 16 to 23, 56 and 57.

Atomic Energy Commission (AEC) Report, "Major Activities in the Atomic Energy Program," January-December 1961, pages 208 to 215.

On reconsideration, it also discussed the following publications cited by appellants in their request for reconsideration:

PNE–109F, "Earth Deformation From a Nuclear Detonation in Salt," July 19, 1962, pages 34, 35 and 36.

UCRL 7166, "Review and Summary of Some Project Gnome Results," December 21, 1962, pages 7 through 14.

All four of those publications have effective dates later than appellants' filing date. UCRL 5677 discusses the plans and possibilities of Project Gnome which proposed to explode a nuclear device in a cavity in a salt formation. The other three publications comment on the results of that project which was actually carried out by the Atomic Energy Commission on December 10, 1961, by detonating a 5 kiloton nuclear device about 1200 feet below the earth's surface in a thick subsurface salt bed.

The gist of the rejection on insufficiency of disclosure is found in the following language of the board:

* * * In view of the facts indicated in the two reports set forth above [UCRL 5677 and AEC Report], it becomes apparent that the specification is, in fact, inadequate for one skilled in this art to carry out the claimed method without undue experimentation to determine necessary but non-disclosed parameters to render the process operative.

There is no specific working example in the specification and the concept of the method set forth therein is based upon conjecture and theory which has not been demonstrated to have factual basis. The specification thus is not a proper constructive reduction to practice since the concept set forth therein is not complete and may not be reduced to practice without additional extensive research. It apparently is not complete and operative in such manner as to enable the skilled atomic technician to carry out the claimed method merely by following the steps disclosed in the specification. Compare Land *vs.* Dreyer, 33 CCPA 1108; 590 O.G. 6; 155 (F.2d) 383; 69 USPQ 602.

The above cited reports indicate that the specification herein does not include sufficient details for operation of the claimed method of activating the neutron producer in such manner as to form the desired cavity containing salt in a molten body for a period of time sufficient to produce the desired result. U.C.R.L. 5677 indicates uncertainty in salt melt formation * * *, the maintenance of the cavity * * * and suggests possible crust formation which would impede heat transfer and also solution * * *.

Further, and more importantly, the A.E.C. Report on the Plowshare experiment wherein a five kiloton nuclear device was activated 1200 feet below the earth's surface in a salt bed, while indicating the production of cavities also discloses a loss of steam and pressure in the cavity * * * and hence, quite apparently, a loss of volatile radioactive elements contained therein * * *. A failure of the cavity to remain sealed would render appellants' disclosed process inoperative; there is no teaching in this application of the additional expedients which would enable one skilled in this art to carry out the claimed method so as to

---

2. University of California Radiation Laboratory.

necessarily obtain the stated cavern containing a zone of molten salt including the radiation products and so sealed as to permit recovery thereof as claimed. Since the specification does not teach all of the expedients required to form a sealed cavern nor does it indicate a positive method for forming the molten salt zone which is also not disclosed as produced in the experiment in the A.E.C. Report, it cannot be determined how the radiation products may be recovered by the use of the claimed fluent material.

The description, indicated by the newly cited reports to be conjectural, based upon appellants' opinions and theories but not supported by the disclosure of a specific complete operative embodiment demonstrating the mode of carrying out the claimed process does not comply with the requirements of 35 U.S.C. § 112.

On reconsideration, the board considered portions of PNE–109F and UCRL 7166 cited by appellants, but was not convinced that the disclosure of the present application was sufficient. Also, it referred to a statement in the latter publication that 99 percent of the nonvolatile fission products were concentrated in the impurities in the salt formations, which remain in an insoluble fraction when samples are dissolved in water, as indicating that appellants do not disclose how to carry out recovery of their radiation products by a fluent material such as water.

With respect to the section 112 rejection, and in disposing of a similar issue under that section in In re Lorenz and Wegler, 305 F.2d 875, 49 CCPA 1227, this court stated that applicants

\* \* \* must make a full and complete disclosure of their invention, leaving nothing to speculation or doubt. That Congress so intended is evident from the strong and comprehensive language of Section 112 \* \* \*.

■ What constitutes "the invention" referred to in section 112 is determined by the application claims viewed in light of the specification. In re Chilowsky, 306 F.2d 908, 50 CCPA 806. Examination of the present claims reveals that, in conformity with the specification, they all require the formation of a "zone of molten salt," and that radiation products be removed from that "zone."

In their brief, appellants assert:

\* \* \* If those skilled in the art follow the steps outlined by Appellants in their description including the use of a vertical drill hole which is formed in a salt dome and thermally insulate the salt dome by the use of packing and pressure valves such as those illustrated in the figures of Appellants' disclosure, a body of molten salt containing desired radioactive isotopes will be formed.

These radioactive isotopes can be recovered by the use of water or selective chemical reagents disclosed by Appellants. \* \* \*

■ However, appellants' brief does not respond to the specific points made by the board in concluding that the disclosure is insufficient. Rather it advances the contention that only appellants' specification is to be examined under the first paragraph of 35 U.S.C. § 112 to determine whether their disclosure is adequate and that what is disclosed in UCRL 5677 and the AEC Report is inapposite to that question. We do not agree. The art of underground nuclear explosions, being largely unexplored even up to the date of this appeal, we think that the instant publications based on an underground experiment under a program of the Atomic Energy Commission constitute responsible evidence which is properly considered in determining that question.

The present appeal is similar in many respects to In re Wooddy, Jr. et al., 331 F.2d 636, 51 CCPA 1317. There we considered the question of adequacy of an application, filed subsequent to the present application, directed to a method involving detonation of a nuclear device

in a cavity in a salt dome to form a body of molten salt and removal of that salt to create a large cavern. There, as in this case, it was apparent from the record that the appellants had not performed their process. Obviously applicable here is the following language from that opinion, particularly insofar as it refers to 35 U.S.C. § 112:

> It appears that no one on earth is certain as of the present whether the process claimed will operate in the manner claimed. Yet absolute ,ertainty is not required by the law. The mere fact that something has not previously been done clearly is not, in itself, a sufficient basis for rejecting all applications purporting to disclose how to do it. In re Chilowsky, 229 F.2d 457, 43 CCPA 775. Our statute requires, inter alia, that the invention be useful (35 U.S.C. § 101) and that it be fully disclosed (35 U.S.C. § 112). * * * If the whole invention is not communicated to those skilled in the art on reading the disclosure, the inventor is not entitled to his limited monopoly under the patent.

■ As in Wooddy, we are not convinced that the present invention *cannot* operate in the manner claimed, but we agree with the board that the disclosure does not describe the invention in sufficient detail to provide reasonable assurance that the claimed process can be carried out by one of ordinary skill in this particular art.

In particular, the specification is considered deficient as to details of operation necessary to provide the zone of molten salt required by the invention. UCRL 5677 reflects uncertainty in salt melt formation, as observed by the board, even though it does seem to hazard some optimistic statements regarding the then proposed Gnome experiment. UCRL 7166, written after the experiment, refers to a puddle of salt melted by the Project Gnome explosion being diluted by salt rock that imploded or collapsed from the cavity with the result that the melt of salt was quenched and the heat, distributed through a much larger mass.

We have noted that appellants pointed out before the board that PNE–109F states that "probably no radioactivity would have escaped" if the device had been placed in a drill hole instead of using the shaft and tunnel of Project Gnome, and that UCRL 7166 ventures that "many salt domes may be a significant improvement over bedded salt deposits," one of the latter having been used in the Project. However, we agree with the board that those statements are purely conjectural. There is no reasonable assurance that appellants' disclosure would enable one skilled in the art to be any more successful in attaining a pool of molten salt than were the experimenters in Project Gnome.

We do not hold that actual performance of appellants' method would necessarily be a prerequisite to patentability. However, the fact that the method has not been performed compels recognition that other problems not yet uncovered may exist in addition to those discussed.

■ Although our agreement with the rejection of all the claims on section 112 makes it unnecessary to discuss the other grounds of rejection in detail, we are also of the opinion the claims are unpatentable in view of the prior art cited against them for reasons similar to those given in our opinion in Appeal No. 7295, 347 F.2d 563, decided concurrently herewith.

The decision of the board is affirmed.

Affirmed.

SMITH, Judge (concurring, with whom RICH, J., joins).

I have studied the rejection of all the claims as unpatentable over the prior art, and I find myself in agreement with the board that appellants' invention would have been obvious in view of the Rougeron and Fermi references. Thus I concur in the majority's affirmance of that aspect of the board's decision.

However, I cannot accept the conclusion of the majority that appellants'

specification is "deficient as to details of operation necessary to provide the zone of molten salt required by the invention." This conclusion appears to be based entirely upon the fact that one of the problems noted in connection with the Project Gnome experiment was partial collapse of the cavity, as reported in UCRL 7166. That *same report,* however, points out:

> It is clear that if rock blow-off and collapse could be minimized so that an undiluted puddle of melt would exist in the base of the standing cavity, then additional power recover studies would be warranted. The salt environment typical of many *salt domes may be a significant improvement* over bedded salt deposits; dome salt contains less water and fewer structural weaknesses than bedded salt and *these properties* would reduce implosion and *collapse.*

[Emphasis added.]

Now it cannot be denied that appellants' specification and drawings contain copious disclosure of the advantages of working with a salt dome formation and set forth in detailed and understandable terms precisely how the invention should be carried out. Thus the majority's position must necessarily amount to this: granted that a person of ordinary skill in this art could follow appellants' instructions to the letter, it is still possible, in view of the Project Gnome results, that the cavity might collapse and thus prevent formation of an effective zone of molten salt. In other words, appellants' disclosed method is possibly inoperative. As the majority asserts:

> * * * There is no reasonable assurance that appellants' disclosure would enable one skilled in the art to be any more successful in attaining a pool of molten salt than were the experimenters in Project Gnome.

I must respectfully disagree. If reasonable assurance is what is desired, what could be *more* reasonable than the assurance of the experts who prepared UCRL 7166 that "salt domes may be a significant improvement" and that their

properties "would reduce implosion and collapse?" The majority seeks to depreciate these assurances by characterizing them as "purely conjectural." To the contrary, I suggest that these statements represent an informed prognosis by highly qualified experts based upon a rigorous diagnosis of the problems encountered in the Project Gnome experiment. And they indicate that appellants' claimed method, when carried out according to the teachings of appellants' disclosure, would indeed be operative.

The majority itself indulges in conjecture and speculation when it states that "the fact that the method has not been performed compels recognition that other problems not yet uncovered may exist in addition to those discussed." Of course this statement is correct—indeed, it is a truism—but I fail to see what it has to do with the present question of the sufficiency of appellants' disclosure. Certainly the majority does not intend to imply thereby that an applicant must attempt to foresee "problems not yet uncovered" and provide solutions for them in his specification, for this would require actual reduction to practice of the claimed invention before the application could be successfully prosecuted.

I, for one, am of the view that this court should give more than mere lip service to the well-established principle it restated in In re Chilowsky, 229 F.2d 457, 43 CCPA 775, that "The mere fact that something has not previously been done clearly is not, in itself, a sufficient basis for rejecting all applications purporting to disclose how to do it." In Chilowsky, a case which also involved applications of atomic energy, this court pointed out that "The failure of other devices designed for the same general purpose does not prove that appellant's device could not operate successfully." The same reasoning applies with equal vigor here. Appellants' specification is more than adequate in providing reasonable assurance to persons having ordinary skill in this art that appellants' invention, if carried out according to the

details in the disclosure, will operate as claimed. This, as the law now stands, satisfies 35 U.S.C. § 112. If the majority seeks to alter the law by refusing patents for subject matter because it has not been actually reduced to practice, it should say so. I would reverse the board's decision regarding sufficiency of disclosure.