## Application of Selig GOLEN
## Patent Appeal No. 7434.

United States Court of Customs and Patent Appeals.

Nov. 10, 1965.

Harvey B. Jacobson, Jacob Shuster, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C., (J. F. Nakamura, Washington D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals which affirmed the rejection of claims 1–4 of appellant's patent application [1] entitled "Lock for Awning Type Windows." Appellant here withdraws claims 1 and 2.

In appellant's words, "the essence of the invention * * * resides in a locking mechanism, novelly associated with the vent frames * * * and the slide bars" of an awning window, his specification stating:

> It is a well known problem that awning type windows are not too secure when the vents are in their closed position inasmuch as it is possible to force open the vents a slight distance without the necessity of actuating the operating handle therefor. Thus, it is the primary object of the present invention to positively and definitely lock each

[1]. Serial No. 36,526, filed June 16, 1960.

vent in the closed position to prevent the vents from being forced outwardly.

The mechanism appellant discloses to solve that problem is shown in the following drawings:

Fig. 5

Fig. 6

The structure will most conveniently be described with reference to appellant's claims, to which we have added appropriate numerals corresponding to the parts illustrated in the drawings.

1. A window construction comprising a main frame [14], a plurality of vent frames [12] mounted thereon for movement into and out of the main frame, vertically movable slide bars [22] mounted upon the sides of the main frame, hinge elements [24] secured to the vent frames near their upper ends and pivotally connected [34] to the vertically slidable bars, vertically swinging cranks arranged near the lower end of the main frame, links [26] pivotally connecting the cranks to the vertically movable slide bars, means for swinging the cranks, and a plurality of vertically spaced lock plates [38] mounted on the main frame for engagement with the vent frames when the vent frames are

moved to a closed position, each of said lock plates being freely pivotally mounted [30] on the main frame and including a notch [46] therein having a longitudinal axis generally parallel to the vent frames when in closed position, each vent frame having a laterally extending lock pin [62] for reception in the notch whereby the outer edge of the notch will provide a lock limit for preventing outward movement of the lock pin and vent frame, and means [60] on each vertical slide bar for actuating said lock plate for raising the outer end of the lock plate as the lock pin on the vent frame moves inwardly and substantially permitting the lock plate to swing downwardly at the forward end thereof for engagement of the notch with the lock pin.

2. The structure as defined in Claim 1 wherein said actuating means for the lock plate includes a

cam surface [54] on the bottom of the lock plate, an actuating pin [60] on said slide bar for engagement with the cam surface, and a notch [52] in the rear edge of the lock plate for receiving the actuating pin after the lock plate has moved to an upwardly pivoted position thereby enabling the lock plate to swing downwardly into locked position, the lower edge of the slot receiving the actuating pin also forming a cam surface for raising the lock plate when the slide bar is moved downwardly initially when moving the vent frames to an open position thereby automatically disengaging the lock plate from the lock pin.

3. The structure as defined in Claim 2 wherein said lock plate, when in locked position is downwardly and forwardly inclined thereby providing a lock surface on the outer surface of the slot inclined downwardly and inwardly for preventing the lock pin on the vent frame from camming the lock plate upwardly.

4. The structure as defined in Claim 3 wherein the entrance to the lock pin slot is flared outwardly for guiding the lock pin into the slot.

In operating the lock device, slide bar 22 is moved upward to close the window. Pin 60 on the slide bar moves along cam surface 54, turning lock plate 38 counterclockwise and allowing lock pin 62 on vent frame 12 to pass under the outer portion of plate 38. Pin 60 then strikes the rear surface of slot 52, tilting plate 38 in a clockwise direction and forcing locking notch 46 over pin 62.

The references are:

Wiley    2,766,491    October 16, 1956.
Tucker   2,893,728    July 7, 1959.
Tucker   2,950,510    August 30, 1960.

█ The examiner relied on Wiley for disclosure of the essential features of appellant's lock mechanism, and on the Tucker patents for disclosure of an operating mechanism, not found in Wiley, for opening and closing the window vents. Inasmuch as appellant's specification describes that operating mechanism as a portion of "conventional awning type window structure," and his brief neither discusses the Tucker patents nor challenges the application of their disclosures to the claimed subject matter by the Patent Office, appellant has abandoned any issue as to the use of the Tucker patents in the rejection, and further discussion of those references is unnecessary. Therefore, we will confine our discussion to a determination of whether the rejection of the claims in view of the Wiley disclosure is proper. In re Diedrich, 318 F.2d 946, 50 CCPA 1355; In re Lorenz and Wegler, 305 F.2d 875, 49 CCPA 1227, and cases cited therein.

The features of Wiley which are pertinent to the rejection are shown in the drawings below:

Fig. 8

Fig. 10

Each side of each vent 12 is locked in the closed position by a lock mechanism including a latch 84 mounted on a pivot 86 in a side of the window frame 7. The latch has an arm 83 with a nose 82 which hooks over latch pin 81 on the side of the vent. A second arm 88 of the latch has a cam surface 89 merging with notch 91. In closing the vents, travel bar 41 is moved upwardly, moving actuating pin 92 thereon along cam surface 89 to rotate the latch clockwise and to allow the latch pin to move under the latch arm. The actuating pin then enters notch 91 and rotates the latch arm counter-clockwise to hook the arm over the latch pin.

In challenge to the board's holding that dependent claims 3 and 4 are unpatentable over Wiley in view of the Tucker patents, appellant urges that the board either ignored or failed to accord proper consideration and weight to the following claimed features of his lock mechanism said to be absent from Wiley:

1. Each of said lock plates * * including a *notch therein having a longitudinal axis generally parallel to the vent frames* when in closed position. (Claim 1).

2. *Outer edge of the notch* will provide a *lock limit for preventing outward movement* of the lock pin and vent frame. (Claim 1).

3. Said lock plate, when in locked position, is *downwardly and forwardly inclined* thereby providing *a lock surface on the outer surface of the slot inclined downwardly and inwardly* for preventing the lock pin on the vent frame from camming the lock plate upwardly. (Claim 3).

4. The entrance to the lock pin slot is flared outwardly for guiding the lock pin into the slot. (Claim 4) [Emphasis supplied]

With respect to the first and second asserted distinctions, the board thought that the indentation or recess in the lower side of Wiley's latch lever may be described as a "notch." We agree. We are unaware of any authority, and none is cited, for appellant's proposition

that such an indentation or recess, to be properly termed a "notch" or "slot" (the latter word is used by appellant as synonymous with "notch" in the claims and specification), must in fact be a narrow, elongated opening and must necessarily serve to confine or restrict the locking pin on the vent frame against lateral movement. Moreover, appellant's argument that the indentation in Wiley's latch is so wide that it cannot confine the lock pin is not supported by any limitation in his claims to a width which would provide a different restriction of lock pin movement than shown by Wiley. As the board noted, the claims make no reference to the inner edge of the notch nearest the pivot, but refer only to the outer edge of the notch as a lock limit against outward movement of the lock pin and vent frames. In that regard it is also pertinent to observe that Wiley states:

> * * * When the latch 84 is in the position shown in Figure 8, the inter-engagement between the contoured nose 82 and the pin 81 is sufficient to prevent opening of the vent by force upon the vent itself.

Finally, we think it quite clear from Fig. 8 of Wiley that the bisector or longitudinal axis of Wiley's "notch" or indentation, as defined by its sloping edge surfaces, is generally parallel to the vent frame when in closed position.

With respect to the third asserted distinction present in dependent claim 3, appellant points out that the inner face of nose 82 of Wiley is inclined downwardly and *outwardly* as viewed in Fig. 8. It is appellant's position that the inclination of that surface, when a lateral force is exerted on Wiley's vent frame, would necessarily result in a camming action tending to raise the latch lever toward a releasing position.

██ Aside from the fact appellant's argument appears to be directly contradicted by the above-quoted sentence from Wiley's disclosure, it seems to us that claim 3 specifies that the longitudinal axis of the notch is generally *parallel* to

the vent frames in closed position, yet also requires that the lock plate be inclined so that the outer edge of the notch is inclined downwardly and *inwardly* when the vent is in closed position. Since the notch is disclosed to be *parallel* to the front edge of the lock plate, it would appear, as the board and solicitor point out, that claim 3, when read in conjunction with claim 1, is somewhat ambiguous in effectively requiring that the front edge of the lock plate be both parallel and inclined to the vent frame in closed position. While appellant asserted error in the board's finding in his Reasons of Appeal, he has not explained the apparent contradiction in terms between claim 1 and claim 3. We must agree with the Patent Office that the orientation of appellant's notch and lock plate cannot be clearly distinguished from the orientation of Wiley's notch and latch.

We think appellant's fourth assertion of error also lacks merit. Figs. 8 and 10 of Wiley clearly show the sides of the "notch" flared outwardly.

The decision is affirmed.

Affirmed.