54 CCPA

**Application of Paul SCHMIDT and Max Wilhelm.**

**Patent Appeal No. 7758.**

United States Court of Customs and Patent Appeals.

May 11, 1967.

Rehearing Denied Oct. 5, 1967.

Smith and Rich, JJ., dissented.

**640**

Harry Goldsmith, Joseph G. Kolodny, Summit, N. J., A. Ponack, Wenderoth, Lind & Ponack, Washington, D. C., for appellants.

Joseph Schimmel, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH and ALMOND, Judges, and WILLIAM H. KIRKPATRICK.[*]

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals affirming the examiner's rejection of product claims 1 and 5 in appellants' application [1] for "Piperazine Sulfonamides."

The invention relates to the compound piperazine-N:N'-disulfonamide of the formula

$$H_2N\text{-}SO_2\text{-}N \bigcirc N\text{-}SO_2NH_2,\text{ and its salts.}$$

The primary issue before us is the sufficiency under 35 U.S.C. § 112 of the disclosure in appellants' specification of the manner and process of using that compound. There it is said that the claimed sulfonamide "assists the liver function in hepatic [2] disturbances and can therefore be used as medicament in human and veterinary medicine."

In his Answer, the examiner rejected the claims, among other reasons, as "predicated upon an insufficiency of disclosure of utility in the specification." He was of the view that the above specification disclosure would not inform the skilled worker "how to use" the compound because the worker would not know which of the "myriad functions" of the liver the compound assists, stating:

\* \* \* It is submitted that the aforesaid attestation communicates nothing to the competent artisan, witness: those diseases involving hepatic disturbance include, inter alia, jaundice, obstructive jaundice, hepatogenous jaundice, acute infectious hepatitis, noninfectious hepatogenous jaundice (toxic hepatitis), acute yellow atrophy, subacute yellow atrophy, acholuric jaundice, retention jaundice, carotenemia, hemolytic jaundice, passive congestion of the liver, congestive (cardiac) cirrhosis, portal hypertension, hepatic coma, cirrhosis of the liver, kwashiorkor, primary and secondary carcinoma of the liver, etc. In view of these hereinbefore mentioned teachings, can it reasonably be assumed that the application as a whole communicates to one skilled in the art how to carry out the avowed purpose of the specification? This Examiner thinks not.

---

[*] Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Serial No. 130,753, filed August 11, 1961.

2. The expression "hepatic" is defined in Webster's New International Dictionary, 2nd Ed., as

Of, pertaining to, or affecting the liver.

In response, appellants urged that "if the functions of the liver are disturbed for *any* reason, this disturbance is diminished by administration of the new compound, the reason of the disturbance being immaterial." (Emphasis supplied). Appellants noted that:

&ast; &ast; &ast; If the function of the liver is disturbed, the aldolase activity in the serum, for example, is increased, not only in a certain affection of the liver, but in various hepatic diseases. The diminution of aldolase units in the serum is consequently a yardstick for the promotion of hepatic function.

&ast; &ast; &ast;

They relied on an affidavit showing that, in contrast to a substituted piperazine disulfonamide compound in the prior art, the claimed compound diminished increases in levels of serum aldolase activity in laboratory rats, which had been induced by subsequent administration of allyl alcohol or carbon tetrachloride.

In a second Answer, the examiner replied to those arguments, observing that

&ast; &ast; &ast; aldolase activity in the serum (which is nowhere mentioned in the specification) *does not* increase in all, or even in a great number of hepatic &ast; &ast; &ast; diseases as appellants would lead one to believe. &ast; &ast; Appellants' statement of utility would suffice only if it had read, "It assists the liver function in those hepatic disturbances involving the increase of aldolase and acid phosphatase units in the serum via diminution of the same." &ast; &ast; &ast; the artisan knowledgeable in diseases of the liver would not even have the remotest idea what to do with 1, 4-disulfamylpiperazine after reading Appellants' specification. &ast; &ast;

In its first decision, the board *reversed* all the examiner's rejections, including that stated above. Thereupon, the *examiner* requested reconsideration from the board, approval for that action having been obtained from various echelons in the Patent Office, including the First Assistant Commissioner. The board then rendered "a new decision," concluded that its first decision "was in error," and *sustained* the examiner's rejection as above stated.

Before reaching the merits of the rejection, it is necessary to dispose of a preliminary matter. It appears that subsequent to the second board decision appellants petitioned the Commissioner of Patents to vacate that decision, urging that "there is no statutory basis" and "nothing in the rules" which provides for the "irregular" request by the examiner for reconsideration. The Commissioner stated:

&ast; &ast; &ast; Title 35 Section 7 of the United States Code provides that "The Board of Appeals has sole power to grant rehearings.", and Patent Office Rule 197 provides that a request or petition for rehearing must be filed within thirty days from the date of the original decision by the Board. Neither of those provisions is limited to a situation in which reconsideration is based on the request of the appellant rather than on that of the examiner. While requests for reconsideration by examiners are rare, it has been the settled practice to entertain them if circumstances justify them, as they appear to have done in the present case. To refuse to consider such requests would result in the anomalous situation that the Board would be powerless to correct any error in the appellant's favor, although it could correct errors militating against the appellant. It is not considered that the procedure in this case is contrary to any applicable rule or statute.

Here appellants continue to urge that the second board decision be vacated and the first reinstated, relying on a footnote in Brenner v. Manson, 383 U.S. 519, 86 S.Ct. 1033, 16 L.Ed.2d 69 (1966).[3]

---

**3.** There the Supreme Court, in rejecting Manson's argument that the Commis- sioner of Patents was not entitled to seek review by that court of adverse

It is the duty of the Patent Office to satisfy itself in the first instance that the statutory requirements pertaining to the obtaining of patents have been met. We are aware of no authority, and appellants cite none, which precludes the Patent Office from retaining jurisdiction in the prosecution of applications and correcting what it considers to be mistakes in its decisions, until the time for judicial review has expired or a patent has issued. Compare In re Citron, 326 F.2d 418, 51 CCPA 869. Quite evidently the board simply overlooked and misapprehended the examiner's reasons in its first decision, and was convinced of its error upon review. Under the circumstances we see no abuse of discretion upon the part of the board in acting as it did here.

We turn now to the merits of the § 112 rejection. It is evident, and appellants do not contend otherwise, that the specification contains no specific disclosure as to just how the compound is to be used. Nor do appellants rely here on their argument below that "if the functions of the liver are disturbed for any reason, this disturbance is diminished by administration of the new compound." Rather, appellants urge that other sulfonamides have been used to assist the liver function in particular hepatic disturbances. As evidence of that, they rely on an article by one Eger which is mentioned in their affidavit referred to earlier in this opinion. That article points out that some sulfonamides, such as sulfanilamide, sulfanylthiocarbamide, sulfonamidodiaminoazobenzene and sulfaphenazol, possess "hepatotropic activity" and "inhibit necrotic [4] changes" i. e. they may protect the liver against damage from hepatitis and chemical attack by allyl alcohol. Appellants are of the view that the Eger article demonstrates that one skilled in the art would be knowledgeable in the manner of using the present sulfonamide.

The solicitor urges that we disregard the Eger article. Although that article is mentioned in the affidavit which was before the examiner, the solicitor contends that the affidavit contents were originally relied upon only to demonstrate patentability over certain prior art, but now, for the first time, appellants cite the article as evidence of the compliance of their disclosure with § 112.

Quite apart from those contentions, and giving appellants the benefit of the doubt on that score, we are not convinced the Eger article demonstrates error in the decision below. As the solicitor points out, appellants' specification makes no reference to protecting the liver against necrotic changes, and the compounds mentioned by Eger are quite different in structure from that claimed here. Under the circumstances, it seems to us unduly speculative to assume that, merely because certain apparently unrelated prior art sulfonamides have been used to protect the liver from the adverse effects of hepatitis or chemical attack, one skilled in the art would immediately recognize that the present compound could be used in that manner.

It is not clear how appellants determined that their compound has liver

---

decisions of this court, stated, 383 U.S. 523, 86 S.Ct. 1036:

> * * * Nor do we find persuasive the circumstance that the Commissioner may not appeal adverse decisions of the Board of Appeals, 35 U.S.C. §§ 141, 142, and 145 (1964 ed.). As a member of the Board and the official responsible for selecting the membership of its panels, 35 U.S.C. § 7, (1964 ed.), the Commissioner may be appropriately considered as bound by Board determinations. * * *

It is quite evident that the Court there was speaking of the Commissioner's lack of right to appeal to this court or the District Court under 35 U.S.C. §§ 141–145, not of internal administration of Patent Office affairs.

4. The solicitor's brief states:

> The term "necrotic" is a cognate of "necrosis", which is defined at page 1002 of Stedman's Medical Dictionary, Unabridged Lawyers' Edition, 1961, as the pathologic death of one or more cells, or of a portion of tissue or organ, resulting from irreversible damage to the nucleus * * *

assisting activity unless they actually used the compound against certain liver ailments or else depended on unfounded speculation. It does not appear that appellants have told what they know about the manner of using the compound. Appellants have neither described the method of use as to enable one skilled in the art to use the compound nor shown that one skilled in the art would know a priori how to use it. See In re Moureu, 345 F.2d 595, 52 CCPA 1363. As this court stated under similar circumstances in In re Lorenz, 305 F.2d 875, 49 CCPA 1227:

> Appellants are seeking a seventeen year monopoly. We would remind them that if they have in truth invented something which promotes the progress of science and the useful arts, then in exchange for a patent grant they must make a full and complete disclosure of their invention, leaving nothing to speculation or doubt. That Congress so intended is evident from the strong and comprehensive language of Section 112 which appellants here have failed to satisfy.

The decision is *affirmed*.

*Affirmed.*

SMITH, Judge (dissenting), in which RICH, Judge, joins.

We are here faced with another appeal wherein the application *when filed* was sufficient as a matter of law to comply with section 112 but which under alleged *present* standards is found "insufficient." See, e. g., my opinion in In re Kirk, 376 F.2d 936, 54 CCPA ——. Further, once appellants demonstrated section 112 was satisfied the basis for the rejection was enlarged to include section 101 by the board in its action on the petition for rehearing. The net result is to make it impossible to determine the reasoning in support of the statutory basis for the rejection.

The facts herein may be briefly reviewed. Appellants filed their application on August 11, 1961. First, consider appellants' disclosure of their invention as a useful product under section 101:

The new sulphonamide has valuable pharmacological properties. It assists the liver function in hepatic disturbances and can therefore be used as medicament in human and veterinary medicine.

To meet the "how to use" requirements of section 112, appellants stated:

> The new sulphonamide is intended for use in the form of pharmaceutical preparations containing it in admixture with a pharmaceutical organic or inorganic excipient suitable for enteral, [or] parenteral * * * administration. Suitable excipients are substances that do not react with the new compounds such, for example, as water, gelatin, lactose, starch, magnesium stearate, talc, vegetable oils, benzyl alcohols, gums, polyalkylene glycols, white petroleum jelly, cholesterol or other known medicinal excipients. The pharmaceutical preparations may be, for example, tablets, dragees, * * * or in liquid form solutions, suspensions or emulsions. They may be sterilized and/or may contain assistants such as preserving, stabilizing, wetting or emulsifying agents, salts for regulating the osmotic pressure or buffers. They may further contain other therapeutically valuable substances. The preparations are obtained in the customary manner.

After five Patent Office actions concerning the claimed compounds, the examiner stated the issues to be:

> * * * 1) the patentability of claims 1 and 3 over the references; and (2) the rejection of claim 3 as unduly broad.

An appeal was then taken to the board. In the examiner's answer of March 2, 1964, all of the appealed claims were, for the first time, rejected for "an insufficiency of disclosure of utility [how to use] in the specification," citing 35 U.S.C. § 112.

The board in its opinion stated:

> Claims 1 and 5 stand rejected as being based on an insufficient disclosure of utility in the specification un-

der 35 USC 112. The Examiner asserts that one skilled in the art would not be taught by the recitation appearing on page one of the specification how to use the instantly claimed compounds. Appellants urge that the statement of utility in the present case is unquestionably clear to anyone skilled in the art.

After careful consideration of all the arguments presented, *we find the rejection based on insufficient disclosure of utility under 35 USC 112 to be not sustainable*. The Examiner limits his consideration of the adequacy of utility disclosure in the specification to page one. However, pages 3 and 4 of the specification describe how to use the claimed compounds and it is considered that *the description of how to use the claimed compounds as it appappears on pages 3 and 4 is adequate under 35 USC 112. We therefore do not sustain this rejection.*

It seems to me that the board in its opinion demonstrated a clear grasp of the principles underlying section 112 concerning the sufficiency of the disclosure as to "how to use" the claimed invention. I fully agree with the above reasoning.

The *examiner*, in a request for reconsideration, argued:

* * * an examination of pages 3 and 4 of the instant specification reveals that the subject matter therein, directed to the intended use of the piperazine disulfonamide and claimed derivatives thereof, relates to the manner in which the claimed compounds can be mixed in the form of pharmaceutical preparations, not to any specific utility [meaning what?] for these pharmaceutical preparations. The teaching in pages 3 and 4 is deemed to fall short of compliance with 35 U.S.C. 112, with regard to "how to use," [no explanation given] * * *.

It seems to me that the examiner totally misapprehends the requirement of "how to use." Rather, the examiner's objection appears to be an alleged failure to state a sufficiently *specific* use for the claimed compounds. No such test is set forth in section 112, discussed infra. The disclosure that the claimed compound "has valuable pharmacological properties [and] * * * assists the liver function in hepatic disturbances and can therefore be used as medicament in human and veterinary medicine" is, in effect, too "general" in the examiner's view.

The board, in its opinion on reconsideration, reversed itself completely, stating:

Material weight was given in our decision to the paragraph beginning on page 3, line 12 and ending on page 4, line 9 in reaching the conclusion that the specification sufficiently described how to use the compound to satisfy 35 USC 112. *It has only recently come to our attention* that this paragraph appears in numerous other applications filed by the attorney of record. We now find that said paragraph, which purports to set forth the manner of use, is an omnibus form paragraph inserted routinely in applications involving possible therapeutic use and, therefore, we can give no material weight thereto. [Emphasis added.]

I find the above reasoning of the board both irrelevant and highly irregular as a basis for determining that section 112 is not satisfied. The board does not indicate its source of information as to "other applications filed by the attorney of record." Nor does the board explain why an attorney's work habits or his practice in other applications is relevant to whether Paul Schmidt and Max Wilhelm, appellants-*inventors* here have, in *their* specification disclosed how to use *their* claimed invention. Appellants' application for a patent for their invention clearly appears to have been penalized by acts of their attorney in other applica-

tions.[1] Further, under what theory or basis did the board find that this alleged information warranted a rehearing?

The board's opinion on rehearing then states:

> This leaves for consideration as bearing on the question of sufficiency of disclosure of utility, the statement given on page 1 of the specification, lines 10 to 13 as follows:
>
> > "It assists the liver function in hepatic disturbances and can therefore be used as medicament in human and veterinary medicine."
>
> We do not consider this is a sufficient disclosure of utility to satisfy *either 35 USC 101 or 35 USC 112* so that others skilled in the art can use the invention * * *. [Emphasis added.]

The board's opinion of March 25, 1965, makes the first express reference to section 101 as the basis for the rejection. In view of the board's grasp of section 112, supra, it is not surprising that it found it necessary to rely on section 101.

I would like to elaborate at this point as to the grant of a rehearing. It is not apparent from the record why the board found it necessary to grant the examiner a rehearing. The request and the opposition are before us. The examiner neither raised any new point nor demonstrated that the board had either overlooked or misapprehended any point offered previously. The examiner's petition is but a rehash in summary form of his earlier, rather extensive, answer. The only new fact which appears in the record is the board's reference in its opinion to knowledge of the attorney's work practice, the source of this information being unknown as far as this record shows. *No* such basis was advanced by the examiner in his petition for rehearing. It seems to me, therefore, that the board's reason for disturbing

its previous conclusions is irrelevant and insufficient as a matter of law to grant an examiner a rehearing of the same facts and arguments previously considered. Based on the facts of record, I think the board manifestly abused its discretion in granting a rehearing. All that I am able to ascertain from the record is that the examiner was dissatisfied with the board's decision and by some good fortune was able to secure a rehearing. I would therefore reverse the decision of the board on rehearing.

Additionally, however, I shall also comment on the merits of this appeal. A summary of appellants' position is stated in their brief as follows:

> In the specification * * * it is stated that the new sulfonamide is useful in that it "assists the liver function in hepatic disturbances". The utility statement, included in the specification, is grounded in the prior knowledge that other sulfonamide derivatives have been effective as liver-protective agents and that this compound, structurally similar to the prior art compounds in having sulfonamide substituents, would be useful for the same purpose. The effectiveness of sulfonamide derivatives as liver-protecting agents is evident from the writings of W. Eger, * * * and, particularly, W. Eger et al., * * *. Both of these publications were referred to in an affidavit submitted during the prosecution of the case * * *.

The affidavit submitted during prosecution was thus discussed in the board's opinion reversing the examiner:

> * * * The Examiner further urges that since the specification is defective with respect to its description of utility, that the said rejection cannot be obviated by an affidavit under Rule 132. With respect to the Albrecht affidavit, paper No. 7, submitted under Rule 132 the Examiner urges that said

---

1. Appellants' application must be judged on its own merits. There is, moreover, nothing to show that the same disclosure of how to use is not equally appropriate to numerous pharmaceutical compounds. The board's conclusion it can give no weight to the "form" paragraph is a total non sequitur.

affidavit is not drawn to the utility disclosed in the specification.

\* \* \* \* \* \*

\* \* \* The Examiner's assertion that the affidavit is not drawn to the utility disclosed in the specification is not convincing since the tests appearing in the affidavit do appear to involve liver function in hepatic disturbances and this is the utility of the claimed compounds as disclosed in the specification. \* \* \*

It seems to me that the board at this point was saying to the examiner, in effect, "you doubted the invention was useful in liver disturbances and the affidavit proves you wrong." This evidence is not "new matter," 35 U.S.C. § 132, because it is proof of the existence of the usefulness alleged, section 101. See Rule 132.

Thus, considering only the board's opinion, it seems that a line of demarcation was carefully maintained between section 101 and section 112, despite the insistence of the examiner's preference to ride two horses by broadly referring to "utility" and obscuring the ground of rejection. It is with regret that I make this observation. But what would be simpler for an examiner than to state: "The claimed composition is not considered *useful*, 35 U.S.C. § 101, because \* \* \*" and/or "The specification *fails to teach one of ordinary skill in the art how to make and/or use* the claimed invention because \* \* \*," and then to state reasoning in support thereof. It seems to me that reliance on "utility," when the examiner could rely on both sections 101 and 112 if he so chose as long as he advanced his reasons, ignores the fundamental requirement of notice to an applicant as spelled out in 35 U.S.C. § 132 and clearly disregards the Commissioner's directives embodied in Rules 104 and 113.

Under the circumstances of record here it seems to me the question of whether the claimed compounds are in fact useful as alleged, section 101, is foreclosed. First, in view of 35 U.S.C. § 132 I fail to see by what authority the board can advance, for the first time in its action on the petition for rehearing, a new statutory basis for affirming the rejection. This is a flat denial of notice and opportunity to be heard. Second, appellants proved during prosecution that the compounds were in fact useful to assist the liver function in hepatic disturbances as asserted in the specification. There can be no doubt on this aspect of the record for there is no contrary evidence of record. Thus the board erred in its action on the petition for rehearing.

The only remaining question is whether one of ordinary skill in the art would know how to use the claimed invention. The position of the examiner and the board appears, in substance, to be that as there are a large number of liver ills, one of ordinary skill in the art would not know *which ill* the compound would be useful in treating. This seems to me to be the only rational basis for the examiner's objection. Thus I interpret the examiner's objection that appellants' disclosure lacked a "specific utility" to mean that the specification does not "contain a written description \* \* \* of the manner \* \* \* of \* \* \* using \* \* \* [the invention] in such *full, clear, concise, and exact terms as to enable* any person skilled in the art to which it pertains, or with which it is most nearly connected, *to* \* \* \* *use the same* \* \* \*." 35 U.S.C. § 112. [Emphasis added.]

Appellants' answer is that the claimed compounds would act as liver-protective agents and one of ordinary skill in the art, *grounded in the prior knowledge of the art*, would know this. Appellants submitted evidence consisting of articles published prior to their filing date. In response to a rejection *based on obviousness*, prior to any rejection based on sections 101 or 112, appellants resorted to the teachings of those articles. They performed the "liver protecting test," according to the article, to show, among other things, "Allyl alcohol injury to the liver of rats with planimetric evaluation of the foci of necrosis in the liver."

The claimed compounds demonstrated "51% protection," the prior art compound (useful in the vulcanization of rubber) demonstrated zero protection. Additional facts in the affidavit showed the claimed compounds exhibited "liver protection after $CC_{14}$—injury," i. e., S.aldolase and S.phosphatase protection. The examiner did not contradict the above evidence. Thus, it seems to me he failed to respond to appellants' argument, supported by factual evidence, that one of ordinary skill in the art would know how to use the claimed invention. Rather, he chose to rest his case on a list of possible ills of the liver.

Considering the record as a whole, I think appellants have the better argument, especially in view of the fact that they submitted their factual evidence relying on known technology *before* being confronted with any rejection under sections 112 or 101.

I would reverse the decision of the board in its action on the petition for rehearing.

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

